**FILED**

JUN 2 4 2011

PATRICK E. DUFFY, CLERK
By_____
DEPUTY CLERK, MISSOULA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 11-07-M-DWM |
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| ROBERT ORVILLE ROWE, | ) | |
| Defendant. | ) | |

## I. Introduction

Defendant Robert Orville Rowe's wife found illicit pictures and videos of her thirteen-year-old daughter on his laptop computer. She showed the images to the police, who subsequently seized the laptop. The police arrested Rowe later that day, and after waiving his <u>Miranda</u> rights, Rowe admitted to taking nude photographs and videos of his stepdaughter. Rowe is currently charged with two counts of Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a), and

-1-

one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Before the Court is Rowe's motion to suppress all physical evidence seized and his resulting statements. Rowe argues his wife lacked authority to consent to the police's search of his laptop. Because at minimum Rowe's wife had apparent authority to consent to the search, the motion is denied.

## II. Factual Background[1]

On November 20, 2010, Jennifer Engstrom returned home after working the night shift. Her husband's laptop was on their bedside table, and Engstrom decided to check what kind of pornography Rowe had been viewing on the computer. Scrolling through the laptop's files, Engstrom discovered inappropriate photos and videos of her thirteen-year-old daughter.

Engstrom contacted her friend, Detective Merifield of the Missoula Police Department, to report what she found. Detective Merifield was off duty at the time, so she relayed Engstrom's report to Sgt. Odlin. Sgt. Odlin spoke with Engstrom on the phone, and then went to her house per Engstrom's request. Once there, Engstrom showed the officer photos on the laptop of her daughter's crotch,

---

[1] Unless otherwise noted, the following facts are summarized from the Missoula Police Department's Inclusive Case Reports. (Dkt #21-1).

-2-

bare breast and nipple.

After viewing approximately fifty such photos, Sgt. Odlin informed Engstrom that he had seen enough. Engstrom then played videos of her daughter exiting the shower that appeared to have been filmed though a hole in the wall. After viewing several clips, Sgt. Odlin told Engstrom that he had seen enough of those videos. Engstrom then proceeded to show the officer videos of Rowe masturbating in her daughter's room.

Sgt. Odlin seized the computer and inquired about Engstrom's relationship and authority over the house. Engstrom told the officer that she and Rowe had been married for four years, that Rowe had lived in the house for the past four months, and that the house was owned by Engstrom and her father. Sgt. Odlin asked if there were any areas in the house that Engstrom was not allowed access to; she informed him there were not. Engstrom then orally consented to Sgt. Odlin conducting a search of the house. During the search, the officer noticed a hole in the ceiling of the laundry room that was apparently used to make the shower videos. Sgt. Odlin also seized a silver digital camera from Rowe's night-stand drawer and a second laptop computer that belonged to Rowe.

Later that day the Missoula Police Department obtained a warrant to search Rowe's house and vehicle, including any computers, for images of child

pornography. Search Warrant (dkt #21-3). Police conducted a traffic stop on Rowe after he left work that evening, arrested him, and searched his vehicle. Back at the station, Rowe waived his Miranda rights and agreed to talk. Advise of Rights (dkt #21-4). Detective Chris Shermer told Rowe that his wife contacted the police about some alarming photographs she found on his computer. The Detective explained that the police had the computer, but he had not yet viewed the images in question. Rowe then admitted to taking nude photographs and videos of his stepdaughter. See Rowe Interview Transcript (dkt #21-5). During a subsequent search of Engstrom's house, police seized a pink digital camera, camera/computer cords, and a metal brace apparently used to make the surreptitious videos.

Rowe moves for the suppression of all evidence seized and his resulting statements on the grounds that (1) the Fourth Amendment was implicated by his legitimate expectation that the his laptop and its contents would remain private and (2) Engstrom lacked legal authority to consent to its search. The government counters that Engstrom had actual or at the very least apparent authority to consent to the search, and even if she did not, the evidence remains admissible under the "fruits of the poisonous tree" exclusionary rule. See United States v. Ramirez-

Sandoval, 872 F.2d 1392, 1396 (9th Cir. 1989).

Because it is clear that Engstrom had apparent authority to consent to the search of Rowe's laptop and that resolves the motion, it is unnecessary for the Court to address the parties' other issues.[2]

### III. Analysis

A search conducted pursuant to valid consent does not implicate the Fourth Amendment's general prohibition of warrantless searches. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Such consent may be given by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). Common authority means "joint access or control for most purposes." Id. at 171 n.7. The government carries the burden of proving the third party had the requisite common authority. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).

Common authority may be either actual or apparent. See United States v. Ruiz, 428 F.3d 877, 880 (9th Cir. 2005). Whether the third party has apparent authority is judged by an objective standard based on the facts available at the time

---

[2]Rowe did not request a hearing, and the government advised that it considers a hearing unnecessary. With the material facts not in dispute, the Court proceeds to the merits of the motion without first holding an evidentiary hearing.

the search began. Rodriguez, 497 U.S. at 181-82. In other words, "[a] search consented to by a third party without actual authority over the premises [or effects] is nonetheless valid if the officers reasonably could conclude from the facts available that the third party had authority to consent to the search." United States v. Gillis, 358 F.3d 386, 390-91 (6th Cir. 2004).

The government has carried its burden showing Engstrom had apparent authority to consent to a search of her husband's laptop. At the time Sgt. Odlin searched Rowe's computer, he knew Rowe and Engstrom were married, that Rowe kept his laptop in a common area, and that Engstrom had knowledge of the computer's contents, demonstrating control over and access to the laptop. Moreover, there was no indication that the laptop was password protected or that Engstrom's use was improper. Based on so much, Sgt. Odlin was able to reasonably conclude that Engstrom had "joint access or control" of Rowe's laptop.

Rowe disagrees. He argues the facts as known by the police officer were ambiguous, requiring him to make further inquiry before searching the computer. He seeks support from United States v. Salinas-Cano, 959 F.2d 861, 864 (10th Cir. 1992), but the case offers little help. In Salinas-Cano, the police sought and received consent from the defendant's girlfriend to search his suitcase, which was located in her private residence. The Tenth Circuit found a lack of evidence that

the girlfriend exercised control over or access to the suitcase that would legitimize her consent, and there was no apparent authority merely on the basis that the suitcase was in the girlfriend's house. Id. at 865-66.

Here, the item to be searched was a computer located in a married couple's common area. This is substantially different than a suitcase belonging to a visiting boyfriend. See United States v. Duran, 957 F.2d 499, 505 (7th Cir. 1992) (noting non-marital relationships involve increased privacy expectations than those inherent in a marriage). Moreover, Engstrom's searches of and familiarity with the computer's contents demonstrated joint access. The girlfriend in Salinas-Cano exhibited no analogous knowledge of the suitcase's contents, which might have indicated common authority. Simply put, a wife who is actively demonstrating access and control over her husband's laptop that he keeps in a common area is not an ambiguous situation demanding the police inquire more about the wife's authority over the item.[3]

---

[3] After the government filed its response brief, Rowe submitted an affidavit stating the laptop was located inside a drawer of his night stand, not on the bedside table, and Engstrom could only use his computer with his permission. He also states he had no reason to suspect his wife would access his computer, especially considering they were "more or less" separated at the time she contacted the police. Rowe Aff., June 17, 2011 (dkt #22). These facts, however, are immaterial as Sgt. Odlin was able to reasonably conclude that Engstrom had joint access to the computer at the time of the search. See United States v. Morgan, 435 F.3d 660, 664 (6th Cir. 2006) ("If apparent authority existed at that time, later-discovered facts that might undermine the initial reasonable conclusion of third-party apparent authority are generally immaterial.").

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY ORDERED that Defendant Rowe's Motion to Suppress (dkt #19) is DENIED.

Dated this 24th day of June, 2011.

Donald W. Molloy, District Judge
United States District Court